The opinion of the court was delivered by
Egan, J.
The defendant was accused, found guilty, and sentenced *952 for the crime of breaking and entering a dwelling-house in the nighttime with intent to steal. From this sentence he has appealed. He objects that the information does not state the ownership of the dwelling-house. This was not necessary nor of the essence of the charge. The dwelling-house was sufficiently described as situated at and designated as No. 148 Canal street, and known as the New-Orleans Club-House and occupied by some person or persons to the district attorney unknown, “ the said person or persons being lawfully therein at the time.” This was sufficient description under the law, even if it be considered matter of substance and not of form or “description of something described in the information.” The accused excepted to the reception of the evidence of a witness, Knapp, to the effect that about the hour of the night when the crime is charged to have been committed “ he saw the accused in his own back premises.” The judge states that the back premises of the witness immediately adjoin those of the New-Orleans Club-House, and that other witnesses had testified to the escape of the burglar from the rear of the Club-House premises to the rear of those of the witness, who had testified to hearing shots fired near by at the time, and that said witness was at the time of the objection about to testify to the arrest of the accused after the shooting (and at the hour the burglary was committed as stated by other witnesses) upon witness’s premises or in the alley adjoining. The evidence was pertinent and properly received. On the trial the counsel for the accused asked a witness, Adeline Smith, with whom he boarded (and also another witness), “ what was the reputation of the accused for honesty among those he dwelt with in her house.” The proper question, if the foundation had been laid, which is not shown by the bill, would have been “ what was the general reputation of the accused for honesty among his neighbors,” and not what particular persons thought of him. The court did not err in excluding the testimony ; a much more serious question is presented by the next and last bill of exceptions, which states thatafter the jury had deliberated upon the case for about two hours and a half they returned into court with their verdict — that they were asked by the judge if they had agreed upon their verdict, to which the foreman answered that they had, and handed it to the clerk, who was ordered to record it; when the counsel for the accused asked that the jury be polled, and while that was being done and before its completion the judge directed the sheriff to stop, and stated “that the verdict was defective, and would have to be changed,” and then asked the jury through their foreman “if it was their intention to find the prisoner guilty of burglary with intent to steal, as charged. The jurjr, through their foreman, answering in the affirmative, the court ordered the verdict to be changed and to be so recorded,” and the judge then had the jury polled the second time; they, the jury, *953 then answered that was their verdict, and the court ordered the verdict to be recorded as so amended, to all of which the counsel for the accused excepted. The verdict of the jury as originally returned into court is not before us, and we can not, therefore, pass upon its sufficiency or responsiveness. The judge pronounced it defective, and we must assume that he was correct. We can not, however, go-further and assume what was the character of the verdict. The verdict as it appears of record is “Guilty of burglary as charged, with intent to steal.” While if the verdict as originally returned was defective it was perfectly proper for the judge so to state to the jury, and to instruct them anew as -to the form in which they should clothe their verdict, it was not proper for him to ask the jury the direct question “if it was their intention to find the prisoner guilty of burglary with the intent to steal, as charged,” and to have recorded as their verdict the ansioer thus elicited. Whatever -the motive, and we have no doubt it was the' best, this was trenching upon the province of the jury and in effect dictating to them their verdict, which in a matter so delicate and important to the liberty of the accused the law does not permit. We think, as before stated, that the proper course under the circumstances in an important criminal trial was. for the judge to have informed the jury that their verdict as originally returned was defective or informal, and as to the proper form of verdict, just as though nothing had been returned into court by them as a verdict, and that after so instructing them they should have been directed and allowed to make up and return their own verdict, whatever it might be. A defective or informal verdict is no verdict, and the case stood in law just as it did when the jury originally retired to make up their verdict, and no other or different charge was permissible than would have been originally, save only that the judge should as before stated have renewed his instructions as to the form or language in which to clothe the verdict in case the jury should find the accused guilty or innocent. Such instructions are very different from a direct question from the court, “ Do you intend to find the prisoner guilty of burglary with intent to steal, as charged?” and especially it was not proper to have recorded as their verclicl the ansioer so elicited. However praiseworthy the inten'tion of the judge, the language and spirit of our law guards too sacredly against any interference by the judge with the facts in a criminal case or any interference with the finding of the jury to permit the matter under consideration to be passed over as a simple irregularity and to grow into a precedent which in some other case may be abused and lead to the most serious ill consequences. Courts of trial can not too strictly observe the line of demarcation between their province and that of the jury in criminal cases arising under our law. We think that as •was said in the State vs. Shields, 11 A. 395, the course pursued by the *954 court a qua in this case was “ not only calculated to secure the unqualified verdict elicited by the question of the judge, but that it might well have been construed by the jury into an intimation of the court as to the guilt or innocence of the prisoner,” and that “ the discretion of the jury should not have been so trammeled.” See, also, the case of the State vs. John Johnson, recently decided. 30 An. 921. The grounds for the motion in arrest of judgment have already been considered, and are insufficient.
It is therefore ordered, adjudged, and decreed that the verdict and sentence appealed from, be and they are avoided and set aside, and the case remanded to be further proceeded with according to law and the principles of this opinion.